**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

**JALEN ALEXANDER,**

    **Plaintiff,**

v.                                                                                     Case No. 2:21-cv-00267
                                                                                    Honorable Thomas E. Johnston, Jr.

**DR. CHARLES LYE, BETSY JIVIDEN,
Commissioner of Division of Corrections
and Rehabilitation, DONALD S. AMES,
Warden, Mount Olive Correctional
Complex, and JARROD WILSON, Hearing
Officer, Mount Olive Correctional Complex,**

    **Defendants.**

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS**

COME NOW defendants, Betsy Jividen, Donnie Ames, and Jarrod Wilson, by counsel, Lou Ann S. Cyrus and Philip B. Sword of Shuman McCuskey Slicer PLLC, with their Memorandum of Law in Support of their Motion to Dismiss. In support of their motion, these defendants state as follows:

**FACTS**

Plaintiff, an inmate at the Mount Olive Correctional Complex ("MOCC"), alleges his rights under the Fourteenth Amendment to the United States Constitution were violated during an inmate hearing in which he was charged and found guilty of assault and battery on another inmate. See, Complaint at "Petition for Writ of Mandamus." Specifically, Plaintiff alleges his procedural due process rights were violated when MOCC hearing officer Jarrod Wilson did not review video evidence during his hearing.

Defendant Betsy Jividen is the Commissioner of the West Virginia Division of Corrections and Rehabilitation ("WVDCR") and defendant Donnie Ames is the Superintendent of MOCC. Plaintiff's claims against Jividen and Ames appear to be limited to allegations that they affirmed the finding of guilty by hearing officer Wilson.

Plaintiff's claims against Jividen, Ames, and Wilson arise out of an inmate fight between him and another inmate that occurred on October 5, 2020. See, Complaint at "Exhibit H." On that date, plaintiff was charged with a violation of the WVDCR rule prohibiting "Assault and/or Battery without Serious Injury." *Id*. Plaintiff pled not guilty. *Id*.

An administrative hearing on the charge from October 5, 2020 was scheduled for October 19, 2020 but was continued to October 26, 2020. *Id*. The hearing report attached to plaintiff's complaint indicates he was found guilty. Plaintiff has also attached a hand-written appeal received by Superintendent Ames's office on November 9, 2020, as well as, another hand-written appeal received by the WVDCR on November 25, 2020. *Id*. at "Exhibit F." The hearing report indicates plaintiff received a sentence of 60 days punitive segregation and loss of privileges, with the exception of library books and phone privileges. *Id*.

On December 4, 2020, Plaintiff filed an "appeal of his placement in punitive segregation" alleging that the hearing officer never reviewed video footage of the incident that occurred on October 5, 2020. *Id*. at "Exhibit G." Plaintiff's appeal was denied on or about December 9, 2020. *Id*. Plaintiff also alleges that the failure to review video footage violates WVDCR Policy 325.00. *Id*. at "Sworn Affidavit of Jalen Alexander." Additionally, plaintiff has attached documentation to his complaint showing that he did not file an administrative grievance with respect to his allegation that video footage was not reviewed until February 21, 2021. See, Complaint at "Exhibit G." The

2

grievance attached by plaintiff does not indicate it was ever appealed or that Plaintiff's administrative appeal rights were ever exhausted.

Notably, plaintiff omits important facts from his legal claims against defendants Jividen, Ames, and Wilson. Specifically, plaintiff has failed to address the fact that the hearing report outlines the testimony of two eyewitnesses to plaintiff being involved in an assault and/or battery—Gregory Carter and Josh Jones. *Id*. at "Exhibit H." The testimony from Mr. Carter was that he saw plaintiff and "inmate Evans locked arm in arm [and] stated that he never seen [sic] inmate Evans throw a punch." Mr. Jones testified that he saw "inmate Evans trying to get away from the Defendant and stated that he never seen [sic] inmate Evans throw a punch." *Id*. Moreover, the hearing report reflects the fact that plaintiff admitted that he and inmate Evans were in a fight. *Id*. Also, the hearing officer considered the testimony and reports from Corrections officers who were present at the October 5 fight and contemporaneously prepared incident reports. See, "Incident Reports" attached as Exhibit 2.

As stated above, plaintiff alleges the defendants violated WVDCR Policy by finding him guilty of assault and/or battery. The relevant WVDCR policy indicates that an inmate shall be found guilty of violating WVDCR rules against assault and battery if there is a finding of the following:

> "1.02 – Assault and/or Battery: No inmate shall physically harm or assault any person with or without a weapon. No inmate shall attempt to physically harm or threaten with violence any person…"

See, WVDCR Policy 325.00 attached as Exhibit 1 at pg. 3.

Further, WVDCR Policy 325.00 outlines the procedures to be used during inmate hearings. See, Exhibit 1 at pgs. 22-36. While none of the procedures specifically relate to video evidence, the procedures do state that inmates are entitled to present evidence on their own behalf, including

3

their own testimony. In this case, there is no suggestion that video evidence was ever available to be considered. Further, the record makes it clear that the plaintiff did not present any evidence on his own behalf and that two eyewitnesses saw the plaintiff fighting another inmate and that the other inmate did not "throw a punch" against plaintiff. These facts, coupled with plaintiff's own admission that he was fighting, makes clear that plaintiff did indeed "physically harm" and "assault" another person in violation of WVDCR Policy 325.00. Moreover, the hearing officer was able to consider the testimony and incident report of corrections officers who personally observed Plaintiff assaulting his fellow inmate. See, <u>Exhibit</u> 2.

Despite the overwhelming evidence of his guilt, plaintiff now alleges defendants violated his Fourteenth Amendment rights based upon the alleged failure to review video evidence during his hearing. Plaintiff makes this claim despite there being no indication in the record that video evidence was ever available or that such evidence would have overcome the testimony of two eyewitnesses and Plaintiff's own admission of fighting. The alleged failure to review the phantom video evidence appears to be the sole factual basis for Plaintiff's claims. Plaintiff's claims against defendants Jividen, Ames, and Wilson all appear in a section of his complaint titled "Petition for Writ of Mandamus." In that section of his Complaint, plaintiff seeks "an order for the petitioner to be released to general population for the respondents violating the Fourteenth Amendment." It is unclear whether other portions of the Complaint seeking monetary damages apply to Defendants Jividen, Ames, and Wilson.

## **STANDARD OF REVIEW**

This motion is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion filed under Rule 12(b)(6) tests the legal sufficiency of a Complaint or pleading. *Giarrantano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A pleading must contain a "short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). When "faced with a Rule 12(b)(6) motion to dismiss . . . courts must . . . accept all factual allegations in the Complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007).

To survive a motion to dismiss, "a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id*. Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

## ARGUMENT

I. **Plaintiff's Fourteenth Amendment claim against defendants Jividen, Ames, and Wilson must be dismissed because plaintiff failed to exhaust his administrative remedies as required by the PRLA and WVPRLA.**

Plaintiff's procedural due process claims under the Fourteenth Amendment must be dismissed because Plaintiff has failed to exhaust his administrative remedies before filing suit, as required by the Prison Reform Litigation Act ("PLRA") and the West Virginia Prisoner Litigation Reform Act ("WVPLRA").

   a. **Plaintiff did not comply with the mandatory exhaustion of remedies under the PLRA and his Complaint must be dismissed.**

The PLRA requires inmates to exhaust their administrative remedies before they bring a lawsuit. 42 U.S.C. § 1997e(a). Under the PLRA, "no action shall be brought with respect to prison

5

conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as available are exhausted. *Id*. The Supreme Court has interpreted the PLRA broadly, stating that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter. Nussle*, 534 U.S. 516 (2002). Dismissal of a complaint is appropriate when the complaint fails to show on its face that the plaintiff exhausted administrative remedies. *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017). The United States Supreme Court recognized in *Ross v. Blake*, 136 S. Ct. 1850 (2016) that exhaustion of statutes like the PLRA is mandatory and must be strictly followed.

In this case, Plaintiff did not file an administrative grievance until February 21, 2021. Further, there is no indication that Plaintiff ever appealed or exhausted his administrative remedies relating to his claims that no video footage was reviewed. As outlined below, Plaintiff had only 15 days to file a grievance under relevant WVDCR policy. Because his grievance was not timely, and was never appealed, dismissal is appropriate.

      **b. The WVPLRA makes it mandatory that an inmate must first exhaust administrative remedies before filing suit.**

The West Virginia Prisoner Litigation Reform Act, W. Va. Code § 25-1A-1, *et seq*., establishes that an inmate must exhaust the administrative remedies promulgated by the correctional facility in which he is housed prior to initiating a civil action related to the conditions of his confinement, including actions under federal and state law and negligence actions. W. Va. Code § 25-1A-2(c); see also *White v. Haines*, 217 W. Va. 414, 618 S.E.2d 423 (2005). "An ordinary administrative remedy includes, but is not limited to, complaints concerning food quality, health care, appeals of prison discipline, physical plant, classification, staff treatment or some other

alleged wrong." W. Va. Code § 25-1A-2(a) (2016) (emphasis added). An inmate's administrative remedies are exhausted only after an inmate timely files a grievance and, if denied, timely appeals the decision to the Warden and the Commissioner if denied by the Warden. *Id*. at § 25-1A-2(d); W. Va. C.S.R. §§ 90-9-3, 90-9-4, 90-9-5, and 90-9-6. The Commissioner is also authorized to establish procedures for ordinary administrative remedies according to his respective authority for issuance of policies governing the conduct of inmates. *Id*. at § 25-1A-2(b).

An inmate must adhere to the following procedure when appealing a decision of the Commissioner:

> Should the inmate believe that the Warden/Administrator's response does not resolve his/her grievance or the Warden/Administrator fails to respond in the time frames set forth in § 5.4 of this Rule, the inmate may submit an appeal to the Commissioner of the Division of Corrections within five (5) days after he/she receives the Warden/Administrator's response or the time for the response has passed. The appeal shall be submitted using the same form as was submitted to the Unit Manager and signing in the appropriate location. Only the grievance form together with the Unit Manager and Warden/Administrator's response shall be submitted. Each grievance appealed to the Commissioner shall be mailed to the Commissioner by first-class mail […]

W.Va. C.S.R. § 90-9-6.1 (2016). "Furthermore, a rejected grievance does not exhaust the grievance process or that step of the process." *Id*. at § 90-9-6.4.

As Plaintiff failed to provide any affirmative evidence that he employed his remedies in a timely fashion, or exhausted those remedies, it appears the Plaintiff failed to comply with the WVPLRA inasmuch as he failed to comply with W. Va. C.S.R. §§ 90-9-3, 90-9-4, 90-9-5, and 90-9-6.

W. Va. C.S.R. § 90-9-4.1, Initial Filing of Grievance, establishes that, "[a]ny inmate may file a grievance utilizing a grievance form within 15 days of any occurrence that would cause him/her to file a grievance." As Plaintiff failed to file a grievance related to the claims outlined

7

above within 15 days of the alleged occurrence, Plaintiff failed to comply with the above-stated W. Va. Code and W. Va. C.S.R. sections.

The United States District Court for the Southern District of West Virginia and West Virginia state courts have repeatedly found that an inmate's failure to exhaust his or her administrative remedies, as required by the West Virginia Prisoner Litigation Reform Act, West Virginia Code § 25-1A-1, *et seq*., is fatal to bringing an action against the WVDOC and its agents. See *Freeland v. Ballard*, No. 2:14-cv-29445 (Doc. 83) (S.D. W. Va. Jan. 23, 2017); *Baker v. Hammons*, No. 2:15-cv-13849 (Doc. 47) (S.D. W. Va. Feb. 9, 2016); *Legg v. Craig Adkins*, No. 2:16-cv-01371 (Doc. 64) (S.D. W. Va. Feb. 23, 2017); *Green v. Nohe, et. al*., Civ. A. No. 17-C-465, Order of September 27, 2017; *Murray v. Matheney, et al*., No. 2:13-cv-15798 (Doc. 299) (S.D. W. Va. Oct. 17, 2017) (each case dismissed for failure to exhaust administrative remedies). West Virginia Courts have been uniform and legion in finding that a failure to exhaust the grievance procedure is a bar to suit. Additionally, case law is clear that a failure to properly follow the grievance procedure is, in fact, a failure to exhaust.

In the case at bar, plaintiff has attached two documents to his complaint indicating an appeal of an administrative grievance to Superintendent Ames and Commissioner Warden. See, Complaint at "Exhibit F." Those appeals suggest plaintiff's grievance related to a claim that his hearing was not held in a timely manner, not that the failure to review video evidence violated his constitutional rights. The only grievance plaintiff has attached to his Complaint relating to the alleged failure to review video evidence is dated February 21, 2021. See, Complaint at "Exhibit G." plaintiff has provided no evidence that this administrative grievance was ever appealed or exhausted. Further, it is obvious from the date of the grievance that it was not filed in a timely

manner, as it was filed in excess of 15 days from when plaintiff was filed guilty of assault and battery on October 26, 2021. See, Complaint at "Exhibit H."

Because the face of the Complaint clearly demonstrates plaintiff has failed to comply with his available administrative procedures, the Complaint must be dismissed.

**II.    The Complaint fails to state a claim that Defendants violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution.**

Plaintiff has alleged that defendants Jividen, Ames, and Wilson violated his due process rights under the Fourteenth Amendment to the United States Constitution. See, Complaint at "Petition for Writ of Mandamus." When a defendant is lawfully convicted and confined to jail, "he loses a significant interest in his liberty for the period of his sentence." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). The Due Process Clause applies only when government action deprives an individual of a legitimate liberty or property interest. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). Thus, the first step in analyzing a procedural due process claim is to identify whether the alleged conduct affects a protected interest. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997) (citing cases). In order to retain a liberty interest in avoiding a particular condition of confinement, the plaintiff must establish that the confinement presents a "dramatic departure from the basic conditions of [his] sentence," in that it imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484-485 (1995).

Plaintiff's Fourteenth Amendment claim relates to his general placement in administrative segregation and does not allege any significant or unusual alteration of his prison life. Further, plaintiff's Complaint does not state a claim against either defendants Jividen or Ames relating to his placement in administrative segregation. While the Complaint does contain general and conclusory statements that he was unfairly placed in administrative segregation, and that the

decision was affirmed by Jividen and Ames, there are no factual allegations of direct involvement by either of the two. The only factual assertions against either Jividen or Ames is that they were either aware of his placement in administrative segregation or that they denied grievance appeals. Plaintiff does not identify any policy or procedure resulting in his placement in administrative segregation that allegedly violates the constitution. While plaintiff generally asserts that the failure to review video evidence violates WVDCR Policy, he points to no specific provisions of the policy relating to video evidence. Further, plaintiff makes his claims while ignoring the fact that the hearing officer heard the testimony of two eyewitnesses and plaintiff's own admission of fighting. See, Complaint at "Exhibit H."

Any claim by the plaintiff that his placement is administrative segregation has violated his rights must be dismissed for failure to state a claim for which relief can be granted. To establish a plausible due process claim, the plaintiff must establish a valid liberty interest. Plaintiff has not alleged that he has lost any good time resulting from his placement in segregation or that any such placement has exceeded his criminal sentence. Plaintiff also has not established that his placement in administrative segregation "imposed an atypical and significant hardship" on him "in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. In *Sandin*, the Supreme Court "found no liberty interest protecting against a 30-day assignment to segregated departure from the basic conditions of the inmate's sentence." *Id*. at 485. Here, Plaintiff has not set forth a factual basis that his placement in MOCC administrative segregation has violated his due process rights. Further, Plaintiff has stated no factual basis that either defendants Jividen, Ames, or Wilson were involved in any wrongful conduct.

Moreover, Plaintiff's claims against Jividen and Ames appear to be rooted in supervisory liability. As such, dismissal is warranted because supervisory liability claims are not authorized

under 42 U.S.C. § 1983. (Discussed in more depth, *infra*.) Moreover, because plaintiff has not alleged the violation of any clearly established law, defendants are entitled to dismissal on the grounds of qualified immunity. (Also discussed, *infra*.)

 **III.** **The claims against the defendants Jividen and Ames in their official capacity should be dismissed because there is no vicarious liability for claims brought under 42 U.S.C. § 1983.**

In *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989), the Supreme Court held that a state, its agencies, and its officials acting in their official capacities, are not "persons" under 42 U.S.C. § 1983. The vehicle for asserting plaintiff's claims in federal court is section 1983. Thus, the defendants, in their official capacities, are not persons who can be sued and the claims should be dismissed.

 **IV.** **To the extent it is alleged, defendants Jividen and Ames cannot be held vicariously liable for the conduct of unidentified MOCC employees under a theory of *Respondeat Superior*.**

To the extent the plaintiff attempts to state a claim for vicarious liability for constitutional violations, such a theory does not exist. Therefore, defendants Jividen and Ames cannot be held vicariously liable for the alleged constitutional violations of the individual corrections officers. Plaintiff has generally asserted that he is entitled to damages for "being put in administrative segregation for false charge," not being permitted to purchase envelopes, and having his "money disappear." Plaintiff has provided no factual basis relating to either defendant Jividen or Ames as to these claims. Accordingly, it appears plaintiff is attempting to hold them vicariously liable for the alleged wrongful conduct defendant Jarrod Wilson.

Defendants Jividen and Ames cannot be held vicariously liable under 42 U.S.C. § 1983 for the alleged conduct of their officers or employees. The United States Supreme Court has explained that, "[g]overnment officials may not be held liable for the unconstitutional conduct of their

subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), citing *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691 (1978). Stated another way, *respondeat superior* cannot form the basis of a claim asserted under the statute. *Green v. Rubenstein*, 2010 U.S. Dist. LEXIS 52535, *10-11 (N.D.W.V. April 19, 2010), citing *Rizzo v. Goode*, 423 U.S. 362 (1976).

> **V. To the extent the Court construes the Complaint as alleging negligent acts against defendants, dismissal of those claims is appropriate under the doctrine of qualified immunity.**

Qualified immunity "shields government officials from liability for civil damages provided their conduct does not violate clearly established statutory or constitutional rights within the knowledge of a reasonable person." *Meyers v. Baltimore Cty.*, 713 F.3d 723, 731 (4th Cir. 2013). The following test is used to determine whether a defendant is entitled to qualified immunity: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the defendant's conduct violated a constitutional right; and (2) was that right clearly established such that a reasonable person would have known that their conduct was unlawful. See *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991). A defendant is "entitled to a qualified immunity defense so long as 'the law did not put the [defendant] on notice that his conduct would be clearly unlawful.'" See *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).

The Complaint also broadly alleges that the defendants violated WVDCR policies relating to the inmate hearing process. Taking plaintiff's allegations in the light most favorable to him, a violation of WVDCR policy would still be insufficient to state a claim against the defendants. Agency policies, even if violated in some technical manner, do not constitute a "clearly established law" that could defeat qualified immunity, because they do not grant inmates any specific rights.

This situation is analogous to the issue that was facing the West Virginia Supreme Court of Appeals in the matter of *Crouch v. Gillispie*, 809 S.E.2d 699 (W. Va. 2018). In *Crouch*, the plaintiff alleged that the West Virginia Department of Health and Human Resources had violated clearly established law by failing to follow its own Child Protective Services guidelines. At issue in *Crouch* was whether the guidelines "rise to the level of clearly established statutory or constitutional right." *Id*. at 705. The West Virginia Supreme Court, in *Crouch*, explained that specificity of a right is required:

> "To prove that a clearly established right has been infringed upon, a Plaintiff must do more than allege that an abstract right has been violated. Instead, the Plaintiff must make a 'particularized showing' that a reasonable official would understand that what he is doing violated that right or that 'in light of preexisting law the unlawfulness' of the action was 'apparent.'"

*Id*. Plaintiff in this case has not directed the Court to any constitutional provision, statute, case, regulation, or any other case law establishing that he has suffered the infringement of any particularized right. Accordingly, because no "clearly established laws" were violated by the defendants, they are entitled to dismissal on qualified immunity grounds.

## **CONCLUSON**

Plaintiff has failed to exhaust his available administrative remedies. In addition to not filing an administrative grievance in a timely manner, he has also failed to exhaust his appeal rights. Plaintiff's claims also do not rise to the level of an actionable Fourteenth Amendment claim, as placement in the segregation unit does not "imposed an atypical and significant hardship" on ordinary prison life. Finally, defendants are entitled to dismissal on qualified immunity grounds because their conduct was discretionary in nature and did not violate the plaintiff's clearly established rights. Accordingly, dismissal of the complaint is appropriate.

WHEREFORE, for the above-stated reasons, Defendants respectfully request the Court enter an Order granting their motion to dismiss, along with any additional relief deemed necessary and appropriate by the Court.

**BETSY JIVIDEN,
DONNIE AMES, and
JARROD WILSON
By Counsel**

/s/ Philip B. Sword
Lou Ann S. Cyrus, Esquire (WVSB #6558)
Philip B. Sword, Esquire (WVSB #10435)
Shuman McCuskey Slicer PLLC
1411 Virginia Street East, Suite 200
Post Office Box 3953
Charleston, WV 25339-3953

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**JALEN ALEXANDER,**

    **Plaintiff,**

v.                                                                            Case No. 2:21-cv-00267
                                                                          Honorable Thomas E. Johnston, Jr.

**DR. CHARLES LYE, BETSY JIVIDEN,**
**Commissioner of Division of Corrections**
**and Rehabilitation, DONALD S. AMES,**
**Warden, Mount Olive Correctional**
**Complex, and JARROD WILSON, Hearing**
**Officer, Mount Olive Correctional Complex,**

    **Defendants.**

## CERTIFICATE OF SERVICE

        The undersigned, counsel for Defendants, hereby certifies that on this 5th day of May 2021 the foregoing ***Defendants' Memorandum of Law in Support of Their Motion to Dismiss*** was electronically filed with the Clerk of the Court using the Case Management/Electronic Case Files (CM/ECF) system and was served on Plaintiff, *Pro Se*, via the USPS by placing the same in a stamped envelope addressed as follows to his last known address:

        Jalen M. Alexander, Inmate No. 3333990
        Mount Olive Correctional Complex
        1 Mountainside Way
        Mt. Olive, WV 25185
        *Plaintiff, Pro Se*

                                              /s/ Philip B. Sword
                                              Lou Ann S. Cyrus, Esquire (WVSB #6558)
                                              Philip B. Sword, Esquire (WVSB 10435)